UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LINDSEY COLLAZO, *individually and on behalf of others similarly situated*,

               Plaintiffs,

v.

RESURGENT CAPITAL SERVICES, L.P. and LVNV FUNDING LLC,

               Defendants.
_____

**DECISION AND ORDER**

6:19-CV-06050 EAW

## INTRODUCTION

Plaintiff Lindsey Collazo ("Plaintiff") commenced this putative class action, on behalf of herself and others similarly situated, on January 16, 2019. (Dkt. 1). Plaintiff alleges that defendants Resurgent Capital Services, L.P. ("Resurgent") and LVNV Funding LLC ("LVNV") (collectively, "Defendants") sought to collect a debt from Plaintiff and others in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"). (*See id.*).

Presently before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 18). Because the communications at issue were not in connection with the collection of a debt and therefore do not fall within the scope of the FDCPA, Defendants' motion to dismiss is granted.

## BACKGROUND

### I. Factual Background

The following facts are taken from Plaintiff's Amended Complaint (Dkt. 16), including documents attached to the Amended Complaint as exhibits (Dkt. 20). On November 14, 2018, "Resurgent had its initial communication with Plaintiff by mailing her a letter." (Dkt. 16 at ¶ 13). The letter notified Plaintiff that:

> You are receiving this notice as a result of your recent dispute regarding the above-referenced account. New York state regulations require us to inform you that you have the right to request substantiation of this debt. Your request for substantiation must be in writing, and must include the reference number provided above and a clear statement that you are requesting substantiation of the debt.
> . . .
> This communication is from a debt collector. However, this notice is for informational purposes only, and is not an attempt to collect a debt.

(Dkt. 20 at 17).

"On or about November 30, 2018, Resurgent had its second communication with Plaintiff" by mailing her a letter. (Dkt. 16 at ¶ 17). The letter provided that "Resurgent Capital Services L.P. manages the above referenced account for LVNV Funding LLC and has initiated a review of the inquiry we recently received." (Dkt. 20 at 18). Prior to receiving both the November 14, 2018, and November 30, 2018, letters, Plaintiff alleges that she neither communicated nor attempted to communicate with Resurgent. (Dkt. 16 at ¶ 19). Plaintiff further alleges that at the time Resurgent sent both letters to Plaintiff, "Resurgent knew that Plaintiff was represented by counsel." (*Id.* at ¶¶ 21-22).

Plaintiff has identified two putative classes in her Amended Complaint. (*Id.* at 3-8). Plaintiff alleges that members of the first putative class were harmed because in its

November 14, 2018, letter, Regent did not disclose that it was "attempting to collect a debt and that any information [would] be used for that purpose," in violation of 15 U.S.C. § 1692e(11). (*Id.* at ¶¶ 36, 41). Plaintiff alleges that members of the second putative class were harmed because in its November 30, 2018, letter, Regent did not disclose that "the communication [was] from a debt collector," in violation of 15 U.S.C. § 1692e(11). (*Id.* at ¶¶ 53-54).

Plaintiff alleges that "LVNV is vicariously liable for Resurgent's FDCPA violations" because "LVNV controls, approves, supervises, and oversees Resurgent's collection activities" and because "there exists a principal-agent relationship between LVNV and Resurgent." (*Id.* at ¶¶ 45-47, 58-60). Plaintiff seeks statutory and actual damages on behalf of herself and the members of the putative classes, as well as recoupment of reasonable attorneys' fees. (*Id.* at 11-12).

## II. Procedural Background

Plaintiff commenced the instant action on January 16, 2019. (Dkt. 1). On February 27, 2019, Defendants filed a motion to dismiss Plaintiff's Complaint. (Dkt. 10).[1] Plaintiff filed an Amended Complaint on March 15, 2019. (Dkt. 16). On March 29, 2019, Defendants filed a motion to dismiss Plaintiff's Amended Complaint. (Dkt. 18). On April 16, 2019, Plaintiff filed a memorandum in opposition to Defendants' motion. (Dkt. 21). Defendants then filed a reply in further support of their motion to dismiss on April 23, 2019. (Dkt. 22).

---

[1] The Court denied as moot this motion to dismiss (Dkt. 10) in light of Plaintiff's Amended Complaint (Dkt. 16). (Dkt. 23).

## **DISCUSSION**

### I. **Legal Standard**

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). To withstand dismissal, a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II.   General Principles

"The Second Circuit has established two principles to assist courts in applying the [FDCPA]. First, 'because the FDCPA is primarily a consumer protection statute,' its terms must be construed liberally to achieve its congressional purpose." *Derosa v. CAC Fin. Corp.*, 278 F. Supp. 3d 555, 559 (E.D.N.Y. 2017) (quoting *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016)), *aff'd*, 740 F. App'x 742 (2d Cir. 2018). "Congress enacted the FDCPA to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017) (quoting 15 U.S.C. § 1692(e)).

"The second principle is that, in considering whether a collection notice violates Section 1692e, [courts in this Circuit] apply the 'least sophisticated consumer' standard." *Avila*, 817 F.3d at 75; *see Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008) ("In this Circuit, the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993))); *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) (stating that the "least-sophisticated-consumer standard" is used to "effectuate" the FDCPA's laudable purpose of "protect[ing] consumers from deceptive or harassing actions taken by debt collectors").

"This hypothetical consumer is a 'naïve' and 'credulous' person," *Ceban v. Capital Mgmt. Servs., L.P.*, No. 17-CV-4554 (ARR) (CLP), 2018 WL 451637, at *2 (E.D.N.Y. Jan.

17, 2018) (quoting *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193 (2d Cir. 2015)), who is absent "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer," *Avila*, 817 F.3d at 75 (quoting *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996)). "However, she is 'neither irrational nor a dolt.'" *Ceban*, 2018 WL 451637, at *2 (quoting *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010)).  As the Seventh Circuit has aptly explained, "[t]he 'unsophisticated consumer' isn't a dimwit.  She may be uninformed, naive, [and] trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (quotations and citations omitted); *accord Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2005) ("We have observed . . . that in crafting a norm that protects the naive and the credulous the courts have carefully preserved the concept of reasonableness, and that some courts have held that even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." (quotations and citations omitted)).

### III. Plaintiff's Amended Complaint Does Not Contradict Her Complaint

As an initial matter, the Court is not persuaded by Defendants' argument that, in an attempt to overcome Defendants' original motion to dismiss, Plaintiff's Amended Complaint contradicts allegations contained in her initial Complaint. (Dkt. 18-1 at 10-11). While some courts have concluded that a court may accept facts asserted in the original complaint where "[t]he plaintiff blatantly changes his statement in order to respond to the

defendants' motion to dismiss" and where the amended complaint "directly contradicts the facts set forth in his original complaint," that is not the situation here. *Wallace v. New York City Dep't of Corr.*, No. 95 CV 4404, 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996); *see also Colliton v. Cravath, Swaine & Moore LLP*, No. 08 Civ. 0400(NRB), 2008 WL 4386764, at *6 (S.D.N.Y. Sept. 24, 2008).[2]

Defendants argue that the new allegations in the Amended Complaint—that prior to receiving the letters Plaintiff neither communicated nor attempted to communicate with Resurgent—contradicted her Complaint. (Dkt. 18-1 at 10-11). However, the Complaint contained no allegations regarding whether Plaintiff had communicated or attempted to communicate with Resurgent before receiving the letters. (*See* Dkt. 1). As such, Plaintiff's new allegations cannot and do not contradict Plaintiff's Complaint.

### IV. Resurgent's Letters Were Not in Connection With the Collection of a Debt and Thus Do Not Trigger the FDCPA

Plaintiff alleges several claims pursuant to the FDCPA. However, the FDCPA's protections are triggered only when the communications at issue are "in connection with the collection of [a] debt." *See* 15 U.S.C. §§ 1692c(a)(2) ("Without the prior consent of the consumer . . . a debt collector may not communicate with a consumer *in connection with the collection of any debt*—if the debt collector knows the consumer is represented by

---

[2] The Court notes that other courts in this Circuit have taken the approach that prior inconsistent pleadings serve as "controvertible, not conclusive admissions[,]" *In re Parmalat Sec. Litig.*, 421 F. Supp. 2d 703, 713 (S.D.N.Y. 2006), and others have disregarded prior inconsistent pleadings where "[t]he changes between the complaint and amended complaint . . . when taken as a whole . . . can be described as clarifying but, at most, as inconsistent[,]" *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 266-67 (S.D.N.Y. Aug. 11, 2008).

an attorney. . . ." (emphasis added)), 1692e(11) ("A debt collector may not use any false, deceptive, or misleading representation or means *in connection with the collection of any debt*. . . ." (emphasis added)), 1692g(a) ("Within five days after the initial communication with a consumer *in connection with the collection of any debt*, a debt collector shall . . . send the consumer a written notice. . . ." (emphasis added)).

The Second Circuit has "conclud[ed] that whether a communication is 'in connection with the collection of [a] debt' [under the FDCPA] is a question of fact to be determined by reference to an objective standard." *Hart v. FCI Lender Servs.*, 797 F.3d 219, 225 (2d Cir. 2015). "Thus, in determining at the motion to dismiss stage whether the [communication] triggers the [FDCPA], [courts] must view the communication objectively, asking whether [the plaintiff] has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent 'in connection with the collection of [a] debt,' rather than inquiring into the sender's subjective purpose." *Id.* (citation omitted). The Second Circuit has identified the following "dispositive" factors that would lead to a conclusion that a communication "was unambiguously sent in connection with the collection of a debt":

> (1) the letter directed the recipient to mail payments to a specified address, (2) the letter referred to the FDCPA by name, (3) the letter informed the recipient that he had to dispute the debt's validity within thirty days, and (4) most importantly, the letter "emphatically announce[d] itself as an attempt at debt collection: 'THIS IS AN ATTEMPT TO COLLECT UPON A DEBT, AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.'"

*Carlin v. Davidson Fink LLP*, 852 F.3d 207, 215 (2d Cir. 2017) (citing *Hart*, 797 F.3d at 226).

Here, Plaintiff summarily argues that "consumers viewing the letters objectively would conclude that Resurgent sent these letters 'in connection with the collection of a debt.'" (Dkt. 21 at 11-12). In support of her argument, Plaintiff cites the following facts: "[b]oth letters include the name of the current and original creditors"; "[t]he November 30, 2018[,] letter contains a wealth of information about the alleged debt"; and "[b]oth letters include a 'Reference ID' for the debt." (*Id.* at 12). This information is contained in the upper right corner of the letters, which appears to be for the purpose of identifying Plaintiff's account as the subject of the communications. (*See* Dkt. 20). Plaintiff does not cite, nor could the Court locate, any authority for the broad proposition that mere reference to a creditor or information relating to a consumer's account could reasonably be interpreted as reflecting a communication sent in connection with the collection of a debt.

Significantly, both letters lack many of the "dispositive" characteristics that the Second Circuit found significant in *Carlin* and *Hart*. Both letters do not direct Plaintiff to mail payments to a specified address, do not refer to the FDCPA by name, and do not inform Plaintiff of her right to dispute the debt's validity. (*See* Dkt. 20 at 1, 2). The November 14, 2018, letter expressly provides that the "notice is for informational purposes only, and is not an attempt to collect a debt" and the November 30, 2018, letter does not announce itself as an attempt to collect a debt. (*Id.*). Further, the November 14, 2018, letter discusses Plaintiff's "right to request substantiation of this debt" under New York state regulations (*id.* at 1),[3] which further cuts against the communication being interpreted

---

[3] According to New York State's Department of Financial Services, debtors may request a "Substantiation of a Debt" to obtain "additional information on most 'charged-

- 9 -

as in connection with the collection of a debt. Accordingly, Plaintiff has failed to plausibly allege the letters could be reasonably interpreted as being sent in connection with the collection of a debt.[4] *See Hummel v. Forster & Garbus LLP*, No. 16-CV-6288 CJS, 2017 WL 4697514, at *6-7 (W.D.N.Y. Oct. 19, 2017) (because the communications "lacked any of the indicia that were present in *Hart* or *Carlin*" and "a consumer could not reasonably interpret the documents as being anything other than what they appear to be—a communication transmitting the stipulation of discontinuance of a state-court action. Such a consumer . . . would have no idea what the underlying legal dispute was about," "the consumer could not reasonably conclude that the documents pertained . . . to the collection of a debt"); *Burns v. Seterus, Inc.*, No. 16-CV-06638, 2017 WL 104735, at *3 (W.D.N.Y. Jan. 11, 2017) ("The context of the notices, which fail to include any statement of by when, how, and to whom the alleged debt must be paid, demonstrate that they were not sent in connection with the collection of any debt."); *Derisme v. Hunt Leibert Jacobson P.C.*, 880

---

off' debts, which are defaulted debts that a creditor removed from its books, and then, typically sold to another entity to collect." New York State Department of Financial Services, *Dealing with Debt Collectors*, https://www.dfs.ny.gov/consumers/ banking_money/dealing_with_debt_collectors.

[4]    Defendants are correct to the extent that they argue the FDCPA's protections are not triggered by communications initiated by someone other than the debt collector. *See Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 372 (D. Conn. 2012); *Boyd v. J.E. Robert Co.*, No. 05-CV-2455 (KAM)(RER), 2010 WL 5772892, at *13 (E.D.N.Y. Mar. 31, 2010); *Gorham-Dimmagio v. Countrywide Home Loans, Inc.*, No. 1:05-CV-0583, 2005 WL 2098068, at *2 (N.D.N.Y. Aug. 30, 2005). Nonetheless, because Plaintiff alleges that she neither communicated nor attempted to communicate with Resurgent prior to receipt of the letters, it would not be appropriate to resolve the motion to dismiss on the ground that Defendants did not initiate the communications.

F. Supp. 2d 339, 372 (D. Conn. 2012) (communication could not be reasonably interpreted as in connection with collection of a debt where it "did not provide terms of payments or deadlines, threaten further collection proceedings, or demand payment in any form").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. 18) is granted. The Clerk of Court is directed to close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:   March 11, 2020
         Rochester, New York